## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KAREN DRAGON,
      Plaintiff,

    v.

STATE OF CONNECTICUT, et al.,
      Defendants.

No. 3:14-cv-749 (MPS)

## MEMORANDUM OF DECISION

### I.      Introduction

Plaintiff Karen Dragon ("Ms. Dragon"), a judicial marshal for the defendants State of
Connecticut and the State of Connecticut, Judicial Branch (the "Defendants"), brings claims
alleging discrimination on the basis of race and gender, retaliation, and hostile work environment
under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*  Defendants move to
dismiss, arguing that Ms. Dragon has failed to state a claim under Federal Rule of Civil
Procedure 12(b)(6).  I GRANT Defendants' motion to dismiss Ms. Dragon's discrimination and
retaliation claims because I find she has failed to allege sufficiently an adverse employment
action, but I DENY their motion as to her hostile work environment claim, which is sufficiently
alleged.

### II.      Facts[1] and Procedural History

Ms. Dragon began working in the Windham County Judicial District in 1999.  (Am.
Compl. [ECF No. 24] ¶ 13.)  She and her mother, Carol Sandoval ("Ms. Sandoval"), were the
first two Hispanic female judicial marshals in Windham County that the Defendants hired.  (*Id.* ¶
13.)  From the outset, she and her mother were denied employment opportunities available to
non-Hispanic female employees.  (*Id.* ¶ 14.)  Their requests to work in lockup were "constantly

---

[1] All facts are taken from Ms. Dragon's amended complaint and, for purposes of this ruling, all inferences are drawn
in her favor.

rejected," although male, non-Hispanic marshals routinely worked there.  (*Id.*)  Ms. Dragon also requested that she receive training for her Commercial Driver's License ("CDL") and be posted to transport duties; both she and her mother were routinely rejected.[2]  (*Id.* ¶ 15.)  In 2000, the Judicial Marshal Service required all marshals to obtain CDL certification, a prerequisite for the "essential part" of a judicial marshal's job of transporting inmates.  (*Id.* ¶ 16.)  Under the collective bargaining agreement, obtaining CDL certification was also a necessary step to advancement in the Judicial Branch as a marshal.  (*Id.* ¶ 17.)  Despite this mandate, Defendants did not allow Ms. Dragon to take the CDL Driver Certification class until 2006.  (*Id.*)

The same year, while on lockup assignment, Ms. Dragon witnessed then-Lead Judicial Marshal Gaudette yell at an inmate and call him a "Spic."  (*Id.* ¶ 23.)  Ms. Dragon asked Marshal Gaudette to speak with her away from the inmate and informed him that his statement offended her.  (*Id.* ¶ 24.)  Marshal Gaudette said "he didn't know why his comment would have offended the plaintiff, because it was not directed at her."  (*Id.*)  Ms. Dragon explained that his comment was offensive and inappropriate, and that he should not speak that way to anyone.  (*Id.*)  Marshal Gaudette, a white, non-Hispanic male, has been promoted since 2006 to his current rank as Supervisor.  (*Id.* ¶¶ 24-25.)

Ms. Dragon alleges that her work has always been "excellent" and that during her career she applied for a promotion to Lead Judicial Marshal three times; each time, she was denied an interview, while marshals who were not Hispanic females and had less education and seniority "moved up in the ranks."  (*Id.* ¶¶ 18-19.)  Chief Judicial Marshal Russell Downer, a white, non-Hispanic male, decided who would have the opportunity to interview.  (*Id.* ¶¶ 20-21.)  Ms. Dragon finally received an interview opportunity in April 2010, and was promoted to Lead

---

[2] As discussed below, Ms. Dragon later alleges that she did work in lockup but does not specify the date such assignment began.  (*See* Am. Compl. ¶ 23.)

Judicial Marshal in 2010.  (*Id.* ¶¶ 22, 30.)  "After" her promotion—no specific date is alleged—"many white, non Hispanic male marshals" were upset, became distant, and stopped speaking to her.  (*Id.* ¶ 30.)  Ms. Dragon heard comments from other marshals that Marshal Thibault, a white, non-Hispanic male, should have received the position, and two of her supervisors told her that the reason other marshals were so hostile and distant was that she was promoted and not Marshal Thibault.  (*Id.* ¶¶ 30-31.)  Ms. Dragon also learned that marshals, including Marshal Griffin, a white, non-Hispanic male, had stated publicly at work that the only reason Ms. Dragon was promoted was "because she is 'Puerto Rican.'"  (*Id.* ¶¶ 32-33.)  Ms. Dragon alleges that her work has been "very challenging" as other marshals routinely subject her to silent treatment and often refuse to do the tasks she assigns that are part of their daily work responsibilities.  (*Id.* ¶ 34.)  Although Ms. Dragon has reported these issues to her supervisors—again, no date is specified—they ignore her complaints or "brush her off by saying that things will get better."  (*Id.*)

In January 2012, Supervisor Gaudette called Ms. Dragon into his office and told her that she was not allowed to speak Spanish at work, claiming that two other marshals—both white, non-Hispanic males—had been offended when she spoke Spanish to her mother.  (*Id.* ¶¶ 26-27.)  Ms. Dragon was surprised as she had often been asked to translate at work.  (*Id.* ¶ 28.)  She complained to Chief Downer, telling him that she was offended.  (*Id.* ¶ 29.)

In April 2012, a white, non-Hispanic female marshal, Germaine Gilbert, became confrontational with Ms. Dragon—raising her voice and waving her finger in Ms. Dragon's face—after Ms. Dragon wrote her up for abandoning her assigned courtroom.  (*Id.* ¶ 35.)  Ms. Dragon notified her supervisor of this incident, who told her to write it up and present it to Chief Downer.  (*Id.*)  After she did so, Chief Downer told her to discard the write up and that Ms. Dragon "did not need to put her complaint in writing or give it to him."  (*Id.*)

3

"Shortly thereafter," Marshal Gilbert filed a complaint alleging that Ms. Dragon had spoken to and shown Marshal Gilbert pictures of her breast surgery, which occurred in January 2012. (*Id.* ¶ 37.)  In May 2012, Ms. Dragon was ordered to Supervisor Gaudette's office, where Supervisor Pease stated to her in front of Supervisor Gaudette that she received a call from Human Resources regarding "some pictures."  (*Id.* ¶ 38.)   After Ms. Dragon asked for clarification, Supervisor Pease motioned with both of her hands towards her breasts and said "Your breasts."  (*Id.*)  Ms. Dragon felt "very embarrassed," denied showing such pictures, and said she had heard a rumor that a male marshal had been asking employees if Ms. Dragon "had shown any pictures of breasts."  (*Id.*)  Approximately two weeks later, Ms. Dragon received a formal letter from Human Resources notifying her of its investigation of the claim.  (*Id.* ¶ 39.)

Ms. Dragon informed the investigator that a male marshal, identified only as "Dexter," had been attempting to interfere with the investigation by asking other employees if they were aware of her surgery or had seen related photos.  (*Id.* ¶¶ 40-42.)  "At this time"—presumably, sometime in May or June of 2012—Ms. Dragon informed the investigator that she had been and continued to be subjected to harassment and discrimination based on her gender and Hispanic heritage.  (*Id.* ¶ 43.)

After the investigator interviewed maintenance personnel James Canning, Marshal Dexter approached Mr. Canning and asked him what he had said.  (*Id.* ¶ 44.)  Mr. Canning said he "told the truth," i.e., that Ms. Dragon had not spoken to him about her surgery and that he had not seen any related photos.  (*Id.*)  Marshal Dexter asked Mr. Canning why he did not lie, that he had already gotten someone else to lie because, "We are trying to get Marshal Dragon out, we're trying to get her fired."  (*Id.* ¶ 45.)  "[S]everal marshals" began calling Mr. Canning a "rat" during the investigation.  (*Id.* ¶ 51.)

Sometime shortly after June 28, 2012, Ms. Dragon met with the investigator to discuss her complaints and the investigation against her.  (*Id*. ¶¶ 46-47.)  The investigator asked her what she knew about Marshal Dempsey's claims that he saw pictures of her surgery; Ms. Dragon denied showing him such photos.  (*Id*. ¶ 49.)  Ms. Dragon then told the investigator that "a lot of" marshals had a hard time with a Hispanic female being promoted to Lead Judicial Marshal. (*Id*.)

On July 20, 2012, Ms. Dragon received an email from the investigator concluding that her actions had violated the Judicial Branch's sexual harassment policy.  (*Id*. ¶ 50.)  On or about August 30, 2012, Defendants "imposed discipline" of an unspecified nature on Ms. Dragon, which Ms. Dragon alleges was in retaliation for her race and gender discrimination complaints. (*Id*. ¶ 52.)  She further alleges that the Defendants had failed to discipline adequately male, non-Hispanic marshals, even though they were aware those marshals had falsified information during the investigation, because those marshals had not made the same complaints as Ms. Dragon.  (*Id*. ¶ 53.)

On September 7, 2012, one week after Ms. Dragon was "disciplined," Supervisory Marshal Bruce Lincoln, a white, non-Hispanic male, posted on Facebook "an E-card showing a female" that read "Sometimes I feel down, then I remember that I have big boobs, and it makes everything better."  (*Id*. ¶¶ 55-58.)  The post was sent to "numerous females," and included Supervisor Lincoln's comment: "If you are not tagged here please don't take it personally or think that I feel that you have small boobs . . . just don't wanna create any 607 [i.e., sexual harassment] violations!"  (*Id*. ¶ 57.)

Ms. Dragon filed her complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the EEOC on February 21, 2013.  After receiving her right-to-sue

letter on June 16, 2014,[3] she filed this action alleging Title VII and state-law claims.  (ECF No. 1.)  I dismissed her state-law claims as barred by the Eleventh Amendment but allowed her to file an amended complaint demonstrating that she had adequately exhausted her administrative remedies as to her Title VII claims.  *Dragon v. Connecticut*, No. 3:14-cv-749, 2014 WL 6633070 (D. Conn. Nov. 21, 2014).  Ms. Dragon filed an amended complaint (ECF No. 24), and Defendants have moved to dismiss it for failure to state a claim.  (MTD, ECF No. 31.)

### III.    Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (internal citation and quotation marks omitted).  In evaluating a motion to dismiss the Court accepts as true all of the complaint's factual, non-conclusory allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Finally, the Court must "draw all reasonable inferences in favor of the nonmoving party."  *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

### IV.    Discussion

---

[3] *See* Am. Compl., Ex. A (right-to-sue letter).  A copy of Ms. Dragon's CHRO complaint is attached to Defendants' motion to dismiss, and Ms. Dragon has not alleged it is inaccurate.  Thus, for purposes of this ruling, the Court will consider it as incorporated by reference in the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (explaining that in deciding a 12(b)(6) motion, the Court must limit itself to the facts alleged in the complaint, which are accepted as true, any documents attached to the complaint as exhibits or incorporated by reference, matters of which judicial notice may be taken, or documents upon which the complaint "relies heavily" and are therefore "integral" to the complaint).

As an initial matter, many of Ms. Dragon's discrimination and retaliation allegations are time-barred.  An administrative complaint filed with the EEOC under Title VII must be "filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The filing deadline is extended, however, to 300 days in States, such as Connecticut, that have agencies "with authority to grant or seek relief from such practice."  *Id*. Title VII "precludes recovery for discrete acts of discrimination that occur outside the statutory time period," even when they are related to acts alleged in timely filed charges.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).  "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id*. at 113.

Many of the alleged discriminatory acts, such as failure to promote and provide training, are discrete acts that are time-barred because they occurred before April 27, 2012, i.e., 300 days before Ms. Dragon filed her complaint with the EEOC.  *See id*. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.").  Thus, the only alleged acts that may constitute actionable discrimination or retaliation claims are acts occurring after April 27, 2012, which, according to her complaint, liberally construed, are: (1) Marshal Gilbert raised her voice and wagged her finger at Ms. Dragon after disobeying her orders, and Chief Downer told Ms. Dragon to discard her write-up of the incident; (2) Marshal Gilbert filed a complaint against Ms. Dragon regarding Ms. Dragon's alleged breast-surgery-related comments; (3) the allegations related to the investigation of Ms. Dragon and subsequent "discipline"; and (4) Supervisor Lincoln's Facebook comments.[4]

---

[4] I note that Ms. Dragon does not argue in her memorandum in opposition to Defendants' Motion to Dismiss that the continuing violation exception should apply to any time-barred allegations related to her discrimination or retaliation claims.  *See Nghiem v. United States Dept. of Veterans Affairs*, 323 Fed. App'x 16, 17 (2d Cir. 2009) ("Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.") (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004)).

As I will discuss below, however, I may consider Ms. Dragon's time-barred allegations for purposes of evaluating her hostile work environment claim. Because a hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,' it does not matter that some of the component acts fall outside the statutory time period." *Morgan*, 536 U.S. at 103. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability." *Id.*

**A. Discrimination**

Title VII prohibits an employer from discriminating against any employee with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). To survive a motion to dismiss, a complaint must present sufficient nonconclusory factual allegations that raise a plausible claim for relief. *Iqbal*, 556 U.S. at 678. In the employment discrimination context, this entails alleging facts that plausibly demonstrate the essential elements of discrimination, i.e., that the plaintiff suffered an adverse employment action due to the defendant's intentional discrimination on the basis of a protected status.[5] *Mabry v. Neighborhood Defender Service*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011) (citing *Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007)). As an essential element of an employment discrimination claim, an adverse employment action must

---

[5] In the proof phase of an employment discrimination matter, the plaintiff can shift the evidentiary burden to the defendant by offering evidence "1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). But to survive a motion to dismiss, a plaintiff need not allege facts establishing each element of this prima facie showing. *E.E.O.C. v. Port Authority of New York and New Jersey*, 768 F.3d 247, 253-54 (2d Cir. 2014) ("[A discrimination complaint] must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." (quotation marks and citations omitted)). This is because the burden shifting structure—an evidentiary mechanism—is not an employment discrimination plaintiff's only method for proving discrimination. *Swierkiewicz*, 534 U.S. at 510-11. A plaintiff with direct evidence of the defendant's discriminatory intent need not engage with burden shifting to prevail. Since pleading standards evaluate the plausibility of a plaintiff's allegations, what matters here are the essential elements of the *claim*, not proof mechanisms.

be sufficiently pled in Dragon's complaint in order to withstand a motion to dismiss.  *See id.* (granting dismissal because plaintiff failed to allege adequately an adverse employment action in an ADEA claim); *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 279-80 (N.D.N.Y. 2012) (same, in a Title VII claim).  Dragon's complaint fails to meet this requirement.  Thus, her race- and gender-based discrimination allegations do not state a claim for relief.

### i.      Race[6]

Ms. Dragon satisfies the first requirement for a race-based discrimination claim, as she is Hispanic.  (Am. Compl. ¶ 8; see note 6, *supra*.)  She has also alleged that her work has always been excellent, thereby satisfying the second requirement of her claim, i.e., that she was qualified for the position she held.  (*Id*. ¶ 18.)

Ms. Dragon's race-based discrimination claim fails the third requirement, however, because she has not sufficiently alleged that she suffered an adverse employment action.  The Second Circuit "define[s] an adverse employment action as a 'materially adverse change' in the terms and conditions of employment."  *Sanders v. New York City Human Res. Adm'r*, 361 F.3d 749, 755 (2d Cir. 2004).  "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id*. (internal quotation marks omitted).  "Examples of such a change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a

---

[6] Although Ms. Dragon uses the term "race" interchangeably with "ethnicity," ethnicity is not listed as a protected characteristic in Title VII.  Courts have debated whether to consider the term "Hispanic" as raising a race or national origin claim.  *See, e.g., Barella v. Village of Freeport*, 43 F. Supp. 3d 136, 175 (E.D.N.Y. 2014) (discussing uncertainty among courts as to whether a "Hispanic" plaintiff should be construed as raising a race or national origin claim under Title VII).  Nonetheless, construing Ms. Dragon's amended complaint in her favor, I find it raises a claim based on race and not national origin.  Her complaint to the CHRO alleges racial, not national origin, discrimination, her amended complaint does not specify her national origin, and her memorandum in opposition to Defendants' motion to dismiss focuses on her race, not national origin.

particular situation.'"  *Id.*  Although Ms. Dragon lists her failure to receive training and her failure to obtain a promotion as examples of adverse employment actions, these actions—even if they were to amount to adverse employment actions[7]—are time-barred.  Similarly, while Ms. Dragon alleges that she complained to her supervisors about the discrimination and hostile work environment she faced and that her supervisors ignored her complaints, she fails to provide the dates of such events.  Without more information, I cannot infer such conduct occurred within the filing period such that it might be considered an actionable adverse employment action.

None of Ms. Dragon's timely race-based discrimination allegations satisfy the adverse employment action standard.  While she alleges that the Defendants imposed "discipline," Ms. Dragon fails to allege any facts that would indicate whether such discipline constituted a "materially adverse change" in the terms and conditions of her employment, or whether it was a "mere inconvenience or alteration of job responsibilities."  *Sanders*, 361 F.3d at 755.  Even drawing all inferences in her favor as I am required to do, I cannot find that her conclusory allegation of "discipline"—without any accompanying clarification as to its effect on her employment—amounted to an adverse employment action.

Similarly, Ms. Dragon's allegations that Marshal Gilbert raised her voice and waved her finger in Ms. Dragon's face after Ms. Dragon wrote her up, that Chief Downer told Ms. Dragon to discard her write-up of the incident, and that the Defendants investigated her breast surgery-related comments, all fail to rise to the level of an adverse employment action because, without more, these incidents do not demonstrate an attendant material adverse change in the conditions of her employment.  *See El v. New York State Psychiatric Inst.*, No. 13cv6628, 2014 WL 4229964, at *4 (S.D.N.Y. Aug. 19, 2014) (finding plaintiff's allegations that coworker yelled at

---

[7] Further, Ms. Dragon alleges she was later promoted to Lead Judicial Marshal and later received CDL training. (Am. Compl. ¶ 30.)

him and supervisors closely scrutinized him failed to allege adverse employment action because "being yelled at, or receiving unfair criticism, does not rise to the level of adverse employment actions" (internal quotation marks and citation omitted)); *Henry*, 18 F. Supp. 3d at 407 (rejecting argument that allegedly false charges against plaintiff amounted to adverse employment action because plaintiff failed to allege any resulting punishment, let alone any punishment that affected her compensation, promotion opportunities, or any other term, privilege, or condition of her employment). Ms. Dragon has therefore failed to state a race-based discrimination claim.

### ii.    Gender

As an initial matter, I note that although the Defendants moved to dismiss Ms. Dragon's gender-based discrimination claim, Ms. Dragon failed to respond to their arguments in her memorandum in opposition. I may therefore deem this claim abandoned. *Massaro v. Allingtown Fire Dist.*, No. 3:03-cv-00136, 2006 WL 1668008, at *5 (D. Conn. June 16, 2006) ("When a plaintiff's specific claim is attacked in a motion to dismiss, a plaintiff must rebut the defendant's argument against that claim or it shall be deemed abandoned.").

Even if I were to consider Ms. Dragon's gender-based discrimination claim, I would dismiss it for substantially the same reasons as her race-based discrimination claim. Although Ms. Dragon has pled she is a member of a protected class, i.e., a woman, and that she excelled at her job, she has failed to allege any adverse action taken against her on the basis of her gender within the applicable time period. She provides a conclusory allegation that she was "disciplined" without any clarification as to its effect on her employment, that she had an incident with Marshal Gilbert, and that Defendants undertook an investigation of her breast surgery-related comments. For the reasons set forth above, none of these actions constitutes a

material adverse change in the conditions of her employment.  Ms. Dragon has therefore failed to state a gender-based discrimination claim.

### B.  Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).  "In order to establish a *prima facie* case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Feingold*, 366 F.3d at 156 (quoting reference omitted).

Ms. Dragon has satisfied the first requirement through her complaint to the Human Resources investigator, which occurred in May or June of 2012, and in which she stated that she had been harassed and discriminated against at work due to her gender and race.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination.") (citing 42 U.S.C. § 2000e–3); *La Grande v. DeCrescente Distrib. Co.*, 370 Fed. App'x 206, 212 (2d Cir. 2010) ("The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including complaints to management.").

Ms. Dragon's allegations fail, however, to satisfy the second requirement of her retaliation claim.  For an employment action to qualify as retaliation, it must be "materially adverse," which in this context means it "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.

53, 57 (2006).  Thus, "Title VII's substantive provision and its antiretaliation provision are not coterminous," as retaliation claims incorporate a broader adverse employment action standard than that utilized in Title VII discrimination claims.  *Id*. at 67.  Yet even under this standard, Ms. Dragon's argument that the investigation into her breast surgery constituted an adverse action fails.  The investigation against her did not dissuade her from making or supporting a charge of discrimination; rather, it appears to have prompted her to make one, and at the very least, did not deter her from complaining.  Nor is it likely to have dissuaded a reasonable worker from doing so, especially if, as the amended complaint suggests was the case here, the reasonable worker viewed the investigation itself as retaliatory.  As alleged in her amended complaint, the only complaint Ms. Dragon made to her supervisors regarding discrimination on the basis of her gender and race that occurred within the applicable statutory period happened *after* her supervisors began their investigation.  (Am. Compl. ¶ 43.)  The Defendants' investigation is therefore not an adverse employment action under the Supreme Court's standard for evaluating retaliation claims.  *See, e.g., James v. Countrywide Financial Corp.*, 849 F. Supp. 2d 296, 312 (E.D.N.Y. 2012) (dismissing plaintiff's argument that his confrontation with his supervisors constituted an adverse action for purposes of his retaliation claim because confrontation did not deter plaintiff from filing a report of harassment).

    To the extent Ms. Dragon is trying to argue that the "discipline" Defendants imposed amounted to an adverse action for retaliation purposes, this argument also fails.  As discussed above, the amended complaint provides no factual basis to support an inference that the "discipline" imposed would dissuade a reasonable worker from making or supporting a charge of discrimination, because the amended complaint is silent as to the nature of the "discipline."  I therefore DISMISS Ms. Dragon's retaliation claim.

13

### C.  Hostile Work Environment

Ms. Dragon has, however, pled a hostile work environment claim that withstands dismissal at this early stage.  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances."  *Id.* at 23.  "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*

In addition, "[t]here is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment."  *Alfano v. Costello*, 294 F.3d 365, 379 (2d Cir. 2002). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  *Id.* at 374 (quoting reference omitted). "Proving the existence of a hostile work environment involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."  *Feingold*, 366 F.3d at 150 (quoting reference omitted).

As discussed above, I may consider Ms. Dragon's time-barred allegations for purposes of her hostile work environment claim.  "Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  *Morgan*, 536 U.S. at 115.  When evaluating such a claim, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period."  *Id.* at 117.  "Provided that an act

14

contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*.

Drawing all reasonable inferences in Ms. Dragon's favor, I find that at least one, if not more, acts contributing to her hostile work environment claim occurred within the filing period. Supervisor Lincoln's Facebook comments regarding female breast size and "607 violations" contribute to Ms. Dragon's argument that she was subject to a hostile work environment on the basis of her gender.  In addition, Ms. Dragon's allegations that Marshal Gilbert raised her voice and waved her finger in Ms. Dragon's face, and that Chief Downer ignored Ms. Dragon's ensuing complaint, though they do not amount to adverse employment actions, are acts occurring within the 300-day window that, when viewed in context of her other allegations, contributed to a hostile work environment.  *See Lehman v. Bergmann Assocs., Inc.*, 11 F. Supp. 3d 408, 419 (W.D.N.Y. 2014) (explaining that facially neutral allegations, when viewed cumulatively with other allegations, may demonstrate disparate treatment for purposes of a hostile work environment claim).  Ms. Dragon's allegations permit an inference that these actions formed part of a larger pattern in which other, subordinate marshals who were upset with her promotion ignored her orders and in which her supervisors ignored her complaints.   Similarly, Ms. Dragon's allegation that Marshal Dexter encouraged other employees to lie during Defendants' investigation of Ms. Dragon so that she would be fired relates to her untimely allegations that marshals were hostile and distant because they wanted a male, non-Hispanic marshal to have received her promotion.   Thus, because at least one act contributing to her hostile work environment claim occurred within the filing period, I may consider her related time-barred allegations.

In addition to the allegations just mentioned, Ms. Dragon alleges, *inter alia*, that she was routinely denied training opportunities, passed up for promotions despite her excellent work, ordered not to speak Spanish at the workplace despite being asked to translate in Spanish in the past, heard the then-Lead Judicial Marshal call a Hispanic inmate a "Spic," had her complaints to her supervisors repeatedly ignored or brushed off, was subjected to an investigation—which she claims was baseless and that her coworkers facilitated by lying—into comments she allegedly made related to her breast surgery, and was ultimately "disciplined" for it.  Although the exact dates and details of many of these allegations are unclear, at this initial stage I find that, taken as a whole, such misconduct is sufficiently "severe or pervasive enough" to create an objectively hostile or abusive work environment based on her gender and race.  In particular, many of her allegations—that her subordinates repeatedly refused to obey her, ignored her, made comments that she only received her promotion because of her race, and that her supervisors repeatedly ignored her complaints on these issues—are sufficient to allege an alteration of her conditions of employment and an abusive working environment.  I therefore find that Ms. Dragon has sufficiently satisfied the objective element of her claim.

I also find that Ms. Dragon has satisfied the subjective element of her claim, as she alleges that she perceived her work environment to be abusive and filed complaints to her supervisors alleging the same.

## V.    Conclusion

For the reasons above, I GRANT in part and DENY in part Defendants' Motion to Dismiss.  In light of this ruling, the parties' motion to extend the scheduling order deadlines until a ruling on the motion to dismiss is issued is GRANTED in part and DENIED in part.  (ECF No.

38.)  The parties shall have until October 26, 2015 to complete all discovery, and until December

10, 2015 to file any dispositive motions.


                                        IT IS SO ORDERED.


                                        ____/s/_____
                                        Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                June 25, 2015